**UNITED STATES DISTRICT COURT**
District of New Jersey

| | |
|---|---|
| **CHAMBERS OF**<br>**JOSE L. LINARES**<br>**JUDGE** | **MARTIN LUTHER KING JR.**<br>**FEDERAL BUILDING & U.S. COURTHOUSE**<br>**50 WALNUT ST., ROOM 5054**<br>**P.O. Box 999**<br>**Newark, NJ 07101-0999**<br>**973-645-6042** |

**NOT FOR PUBLICATION**

**LETTER OPINION**

April 10, 2007

<u>VIA ELECTRONIC FILING</u>

Edward J. Nesselquist, Esq.
33 Woodland Avenue
Glen Ridge, NJ 07028

David J. Cooner, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

Bryan H. Mintz, Esq.
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102

      Re:    <u>**Trans Hudson Express, Inc. v. Nova Bus Co., et al.**</u>
              **Civil Action: 06-4092 (JLL)**

Dear Counsel:

      This matter comes before the Court on Defendants' ("Nova Bus") motion to dismiss Plaintiff's ("Trans Hudson") Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] This matter is resolved without oral argument. Fed. R. Civ. P. 78. For the reasons set forth below, Defendants' motion to dismiss is granted, in part, and denied, in part.

---

[1] The Court recognizes that it has the authority to convert the instant motion to dismiss into a motion for summary judgment, particularly since the parties had adequate notice that the Court might do so, and both parties submitted affidavits for the Court's consideration. <u>See, e.g.</u>, <u>McDaniels v. New Jersey</u>, 144 Fed. Appx. 213, 2005 WL 730565, at *2 (3d Cir. Mar. 31, 2005) (holding that plaintiff had adequate notice of conversion where motion to dismiss was framed in the alternative as motion for summary judgment and plaintiff responded to motion by mentioning summary judgment in body of his memorandum). Nevertheless, the Court declines to convert the instant motion into a motion for summary judgment, finding that it is unnecessary to do so at this time.

**I.      Factual and Procedural Background**

Trans Hudson is a corporation of the State of New Jersey, and has its principal place of business in Hudson County, New Jersey. (Compl. at 1). Nova Bus Company – a division of Prevost Car Inc. – is a corporation of the province of Quebec, Canada, with its principal place of business in Quebec, Canada. (Def. Notice of Removal at 2). Nova Bus manufactured the bus at issue in this case (hereinafter "Bus"), and sold same to New Jersey Transit Corporation ("NJTC") (Compl., First Count, ¶ 2). NJTC subsequently leased the Bus to Trans Hudson. (Compl., First Count ¶ 3). Under the terms of the lease agreement, Trans Hudson was responsible for the repair and upkeep of the Bus. (Id.). On July 11, 2005, the Bus "suddenly caught fire and was destroyed." (Compl., First Count, ¶ 4). As a result of this fire, Plaintiff alleges that it was "deprived of the use and profits from said bus." (Id., ¶ 7).

On July 11, 2006, Trans Hudson filed the instant Complaint in the Superior Court of New Jersey, Law Division. Counts One and Four of the Complaint allege strict liability and negligence. (Compl., First Count, ¶ 7; Fourth Count, ¶ 4). Count Two of the Complaint alleges breach of warranty. (Compl., Second Count, ¶ 2). Finally, Count Three alleges a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312. (Compl., Third Count, ¶ 2).

On August 28, 2006, the case was removed by Defendants to this Court on the basis of diversity jurisdiction. On September 11, 2006, Defendants filed the instant motion to dismiss, asserting that Plaintiff's claims of negligence, strict liability, breach of warranty, and the Magnuson-Moss Warranty Act claim each fail as a matter of law.

**II.     Standard of Review**

The applicable inquiry under Federal Rule of Civil Procedure 12(b)(6) is well-settled. Courts must accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Harlow v. Fitzgerald, 457 U.S. 800 (1982); Allegheny Gen. Hosp. v. Philip Morris, Inc., 228 F.3d 429, 434-35 (3d Cir. 2000). The question is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be given an opportunity to offer evidence in support of their claims. Scheuer, 416 U.S. at 236. Dismissal under Rule 12(b)(6) is not appropriate unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co., 267 F.3d 340, 346 (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). The Third Circuit has further noted that courts are not required to credit bald assertions or legal conclusions improperly alleged in the complaint. In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1429 (3d Cir.1997). Similarly, legal conclusions draped in the guise of factual allegations may not benefit from the presumption of truthfulness. In re Nice Sys., Ltd. Sec. Litig., 135 F.Supp.2d 551, 565 (D.N.J. 2001).

### III.   Legal Discussion[2]

####   A.   Strict Product Liability and Negligence Claims

Trans Hudson asserts two separate tort claims: (1) strict product liability, and (2) negligence.  (Compl., First Count, ¶ 7; Fourth Count, ¶ 4).  In particular, Plaintiff asserts that "[b]ased upon the New Jersey Products Liability Act, and such other applicable law . . . Defendants . . . are liable to the plaintiff based upon strict liability." (Compl., First Count, ¶ 6).  Moreover, according to Plaintiff, the "aforementioned fire was due to the negligent design and manufacture of the aforementioned Nova Bus by Defendants . . ." (Compl., Fourth Count, ¶ 3).  Plaintiff does not allege any personal injury or property damage – aside from the physical damage to the Bus itself – resulting from the July 11, 2005 fire.

Defendants move to dismiss said claims on the basis "that an action may not be brought in strict liability or negligence for economic loss caused by damage to the product itself." (Def. Br. at 3).  In particular, Defendants claim that "remedies for such damages should proceed under the Uniform Commercial Code." (Id.).  Plaintiff does not expressly dispute that the parties' relationship is governed by a contract for the sale of goods.[3]  Rather, Plaintiff argues that it should nevertheless be permitted to maintain the strict product liability and negligence claims for the economic loss it suffered because the defective product at issue created "a serious and substantial risk to passengers who routinely use the bus as well as the driver of the bus." (Pl. Opp'n Br. at 11).

As a preliminary matter, the New Jersey Products Liability Law[4] provides that a "'[p]roduct liability action' means any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. 2A:58C-1b(3).  Subsection (2) of the New Jersey Products Liability Law goes on to define "harm" as:

> Physical damage to property, <u>other than to the product itself</u>; (b) personal physical illness, injury or death; (c) pain and suffering,

---

[2] Since this Court presently exercises its diversity jurisdiction over the Complaint, the law to be applied is that of the forum state – New Jersey.  <u>Am. Cyanamid Co. v. Fermenta Animal Health</u>, 54 F.3d 177, 180 (3d Cir. 1995).  Furthermore, the parties do not dispute that New Jersey law applies.  Accordingly, the Court will apply New Jersey law to Plaintiff's claims.

[3] <u>See generally</u> <u>Sons of Thunder, Inc. v. Borden, Inc.</u>, 690 A.2d 575, 587 (N.J. 1997) (explaining that "Article 2 of the Uniform Commercial Code (UCC), adopted in New Jersey as N.J.S.A. 12A:2-101 to -725, governs the contract between [the parties] because it is a contract for the sale of goods.").

[4] N.J.S.A. 2A:58C-1 to -11.

>mental anguish or emotional harm; and (d) any loss of consortium
>or services or other loss deriving from any type of harm described
>in subparagraphs (a) through (c) of this paragraph.

N.J.S.A. 2A:58C-1b(2) (emphasis added). Although the New Jersey Products Liability Law appears to exclude claims for physical damage to the product itself, the New Jersey Supreme Court has recognized that "[a]lthough the Law excludes physical damage to the product itself from the definition of 'harm,' the Legislature did not intend to codify in the [statute] all common-law remedies." Alloway v. General Marine Indus., L.P., 695 A.2d 264, 274 (N.J. 1997) (internal citation omitted). Therefore, because the exclusion of physical damage to the product itself from the definition of "harm" under N.J.S.A. § 2A:58C-1b(2) is not dispositive, the Court will proceed in its analysis of Plaintiff's strict product liability and negligence claims. See, e.g., Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 499 (D.N.J. 2000) (explaining "Naparo's claims for damages to the allegedly defective product itself are not automatically precluded by their exclusion from the [New Jersey Products Liability Law]").

The New Jersey Supreme Court has held that "a commercial buyer seeking damages for economic loss[5] resulting from the purchase of defective goods may recover from an immediate seller and a remote supplier in a distributive chain for a breach of warranty under the U.C.C., but not in strict liability or negligence." Spring Motors Distribs., Inc. v. Ford Motor Co., 489 A.2d 660, 663 (N.J. 1985) (emphasis added).[6] The court reasoned that "[t]he considerations that give rise to strict liability do not obtain between commercial parties with comparable bargaining power." Id. at 670.[7]

---

[5] Economic loss "encompasses actions for the recovery of damages for costs of repair, replacement of defective goods, inadequate value, and consequential loss of profits." Alloway v. Gen. Marine Indus., L.P., 695 A.2d 264, 267 (N.J. 1997). See generally Naporano Iron & Metal Co., 79 F. Supp. 2d at 498 (explaining that under "the economic loss doctrine, a plaintiff seeking relief for damages sustained from the purchase of a defective product is limited to contractual remedies under the Uniform Commercial Code. Where the defective product fails – and harms only the product itself – the purchaser has lost only the benefit of the bargain.")

[6] See also Paramount Aviation Corp. v. Augsta, 288 F.3d 67, 73 (3d Cir. 2002) ("As far as parties (whether commercial or non-commercial) within the distribution chain of goods are concerned, the U.C.C. alone controls the liability of a seller of goods for economic loss arising as a result of a defect in those goods; there is, accordingly, no liability in a tort action whether it be one asserting strict liability or negligence.").

[7] To the extent that Plaintiff relies predominately on the People Express Airlines, Inc. v. Consol. Rail Corp. decision, the Court finds Plaintiff's reliance on same to be misplaced. 495 A.2d 107, 116 (N.J. 1985). In Paramount Aviation, the Third Circuit addressed the People Express decision only after finding that the Spring Motors and Alloway holdings were inapplicable where the service provider plaintiff – who was not "a purchaser in the distribution

Thus, the <u>Spring Motors</u> holding appears to have foreclosed Plaintiff's ability to seek recovery in tort for damages to the Bus at issue, particularly since there is no suggestion that there was any type of disparity in bargaining power between the parties in this case. Nevertheless, in <u>Consumers Power Co. v. Curtiss-Wright Corp.</u>, 780 F.2d 1093 (3d Cir. 1986), the Third Circuit recognized a "sudden and calamitous" exception to the economic loss doctrine. There, the Third Circuit explained that "we do not believe <u>Spring Motors</u> precludes commercial parties from recovering for property damage to defective products in strict liability actions." <u>Id.</u> at 1100. In finding that the economic loss doctrine would not control in situations where a product's failure "caused a sudden, violent and calamitous accident which posed a serious threat to persons and property," the Third Circuit explained the following:

> It is pure fortuity that the explosion that reduced Consumers Power's engine to scrap did not damage any person or property nearby. The defective compressor disc did not lead merely to a loss of efficiency or a decline of profits; the disc's failure caused a sudden, violent and calamitous accident which posed a serious threat to persons and property. The damage caused by the explosion is property damage, not economic loss.

<u>Id.</u> at 1099. Although Plaintiff does not cite to the <u>Consumers Power</u> decision, Plaintiff does argue that it should be permitted to maintain the cause of action for the economic loss it suffered because the defective product at issue created "a serious and substantial risk to passengers who routinely use the bus as well as the driver of the bus." (Pl. Opp'n Br. at 11). As a result, the Court will construe Plaintiff's argument in this regard as seeking to fall within the "sudden and calamitous" exception to the economic loss doctrine set forth in <u>Consumers Power</u>.

Despite the Third Circuit's holding in <u>Consumers Power</u>, the New Jersey Supreme Court has not yet resolved the issue of whether the U.C.C. or tort law controls where the defective product at issue poses a serious risk to other property or persons, but ultimately only causes harm to the product itself. <u>See, e.g.</u>, <u>Alloway</u>, 695 A.2d at 273 (explaining that "in this case we do not resolve the issue whether tort or contract law applies to a product that poses a risk of causing personal injuries or property damage but has caused only economic loss to the product itself.").

Nevertheless, one year after the <u>Alloway</u> decision was rendered, the Appellate Division, in <u>Goldson v. Carver Boat Corp.</u>, 707 A.2d 193 (N.J. Super. Ct. App. Div. 1998), chose to address the very issue left unresolved by the New Jersey Supreme Court. There, the Appellate Division held that regardless of the manner in which the damage occurs, claims for damage to a product itself will be governed by the U.C.C. In particular, the Appellate Division explained:

---

chain" – was "not in a position to engage, directly or indirectly, in the risk allocation contemplated by the U.C.C." <u>Paramount Aviation</u>, 288 F.3d at 73-76. Plaintiff, in this case, has made no such argument.

> Where, as here, there is no substantial disparity in bargaining
> power, and the only damage caused by the defective product is to
> the product itself, contract law, and the law of warranty in
> particular, is best suited to set the metes and bounds of appropriate
> remedies.  Damage to a product itself is most naturally understood
> as a warranty claim because the cause of action rests on the
> premise that the product has not met the customer's expectation.

Id. at 200.[8]

Despite the apparent conflict between the Consumers Power and Goldson holdings, the Court agrees with the approach taken by Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 501 (D.N.J. 2000). There, the court explained that "in light of the significant intervening developments in New Jersey law and tort law generally, this Court must consider whether at this time, the New Jersey Supreme Court would approve a 'sudden and calamitous' exception to the economic loss doctrine." Id.  The Naporano court went on to explain that not only did the Appellate Division expressly reject the "sudden and calamitous" exception to the economic loss doctrine in Goldson, but in addition, in discussing the unresolved issue of whether tort or contract law applies to a product which poses a risk of causing personal injuries or property damage but only causes economic loss to the product itself, the New Jersey Supreme Court, in Alloway, did not discuss the Consumers Power decision; rather, the court discussed the United States Supreme Court's decision in East River Steamship Corp. v. Transamerica Delaval, Inc., 476 U.S. 858 (1986).  Alloway, 695 A.2d at 273.

In East River, which was decided five months after the Consumers Power decision, the United States Supreme Court rejected the "sudden and calamitous" exception, and explained the following:

> The intermediate positions, which essentially turn on the degree of
> risk, are too indeterminate to enable manufacturers easily to
> structure their business behavior.  Nor do we find persuasive a
> distinction that rests on the manner in which the product is injured.
> We realize that the damage may be qualitative, occurring through
> gradual deterioration or internal breakage.  Or it may be
> calamitous.  But either way, since by definition no person or other
> property is damaged, the resulting loss is purely economic.  Even
> when the harm to the product itself occurs through an abrupt,
> accident-like event, the resulting loss due to repair costs, decreased

---

[8] See, e.g., Robinson v. Jiffy Executive Limousine Co., 4 F.3d 237, 242 (3d Cir. 1993) (explaining that "although state intermediate appellate decisions are not automatically controlling where the highest court of the state has not spoken, where, as here, jurisdiction in federal court is based on diversity of citizenship, we must give serious consideration to the decisions of the intermediate appellate courts in ascertaining and applying state law.").

> value, and lost profits is essentially the failure of the purchaser to
> receive the benefit of its bargain – traditionally the core concern of
> contract law.

East River, 476 U.S. at 870.

In light of the foregoing, the Court determines that it is reasonable to assume that the New Jersey Supreme Court would follow East River in rejecting the "sudden and calamitous" exception to the economic loss doctrine.[9] See, e.g., Naporano Iron. 79 F. Supp. 2d at 504 ("[T]his Court believes that the New Jersey Supreme Court would follow East River as well – at least where, as here, the parties are of relatively equal bargaining power.  Under this Goldson and East River view, New Jersey law contains no 'sudden and calamitous' exception to the economic loss doctrine."); Goldson, 707 A.2d at 200 (following East River, and finding that where there is no substantial disparity in bargaining power, "we are content to allow the loss to remain where the forces of the marketplace placed it.").  Plaintiff has given this Court no reason to find otherwise.

Accordingly, Plaintiff's claims for the economic loss it suffered will be governed by the U.C.C., and not by tort law. See, e.g., Flowers v. Viking Yacht Co., 840 A.2d 291, 296 (N.J. Super. Ct. 2003) (holding that "plaintiffs may not, as a matter of law, pursue their aforesaid economic claims on a tort theory; their exclusive remedy is under the Uniform Commercial Code.").[10]  Under these circumstances, Plaintiff's claims for negligence and strict products liability each fail as a matter of law, and are thus dismissed with prejudice.

### B. Breach of Warranty Claim

Trans Hudson has also filed a claim for breach of warranty under the Uniform Commercial Code.  (Compl., Second Count, ¶ 2).  Defendants argue that the cause of action accrued in 1999 – the date on which the Bus was allegedly purchased by NJTC. (Def. Br. at 3). Defendants further argue that under the U.C.C., the statute of limitations for breach of warranty claims is four years from the date of purchase. (Id.).  Thus, because "this suit was filed seven years after the purchase of the Bus," Defendants claim that Plaintiff's Second Count – alleging

---

[9] See, e.g., Robinson, 4 F.3d at 239 (affirming district decision declining to follow Third Circuit precedent and explaining that "when we are applying state law and there is persuasive evidence that it has undergone a change, we are not bound by our previous panel decision if it reflected our reliance on state law prior to its modification.").

[10] But cf. Emerson Radio Corp. v. Orion Sales, Inc., 95-6455, 2000 WL 49361, *8 (D.N.J. Jan. 10, 2000) ("Spring Motors dealt only with the tort theories of strict liability and negligence. Unfair competition, like fraud, is an intentional tort and every person is under a duty not to commit intentional torts. Thus, the unfair competition claim may co-exist with the breach of contract claim.").

7

breach of warranty – is barred by the statute of limitations and should therefore be dismissed. (Id.).

On the other hand, Plaintiff claims that Defendants gave NJTC an extended warranty; therefore, "Plaintiff's cause of action would have accrued on July 11, 2005 and plaintiff's suit was commenced well within the warranty provision of the UCC." (Pl. Opp'n Br. at 13).  In particular, Plaintiff asserts that there was "an extended warranty to the purchaser of the bus, [but] it is not presently known what if any extended five year unlimited mileage warranty [existed]." (Id.).

The relevant New Jersey statute provides, as follows:

> An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. . . . A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. <u>A breach of warranty occurs when tender of delivery is made</u>, <u>except that where a warranty explicitly extends to future performance of the goods</u> and discovery of the breach must await the time of such performance <u>the cause of action accrues when the breach is or should have been discovered</u>.

N.J.S.A. § 12A:2-725(1)-(2) (emphasis added).  Plaintiff attempts to fall within the "future performance" exception to the general rule that the breach of warranty occurs when the tender of delivery is made, namely by alleging that Defendants had provided NJTC with an extended warranty "which explicitly extends to future performance of the goods." N.J.S.A. § 12A:2-725(2).  Under that exception, "the cause of action accrues when the breach is or should have been discovered." (Id.).  Thus, according to Plaintiff, the cause of action for breach of warranty accrued on July 11, 2005 – the date on which the fire occurred. (Pl. Opp'n Br. at 14).

Plaintiff cites to <u>Docteroff v. Barra Corp. of Am.</u>, 659 A.2d 948 (N.J. Super Ct. App. Div. 1995), in support of the argument that its cause of action accrued when the breach was or should have been discovered, and not on the date on which the Bus was delivered to NJTC.  (Pl. Opp'n Br. at 14).  As a preliminary matter, the Court notes that Plaintiff's reliance on the <u>Docteroff</u> decision appears to be misplaced.  In <u>Docteroff</u>, the Appellate Division recognized the "future performance" exception to the four-year statute of limitations for breach of warranty claims under the U.C.C.  <u>Id.</u> at 953-54.  There, the court explained that the "key requirement in finding a warranty of future performance is that it makes specific reference to a future time." <u>Id.</u> at 954 (citation omitted).  The court went on to find that the "future performance" exception applied in that case because the warranty at issue referred to a condition in the future, namely by promising that the roof will be "watertight" and would be repaired if it should begin to leak. <u>Id.</u>  In particular, the court held that:

> Where, incident to a sale, the seller of <u>consumer goods</u> warrants to repair and maintain the goods for a period of time in the future, the provisions of N.J.S.A. 12A:2-725(2) control, and the four-year statute of limitations does not begin to run until after the breach of warranty was or should have been discovered.

<u>Docteroff</u>, 659 A.2d at 955 (emphasis added). However, the court specifically noted that "[t]his rationale is applicable in this case where there is <u>no suggestion of an arm's length or commercial relationship</u> between" the parties. <u>Id.</u> at 954 (emphasis added). To the contrary, the Bus at issue in this case was used for commercial purposes. <u>See</u> Pl. Opp'n Br. at 7. Furthermore, there has been no suggestion that Trans Hudson, Nova Bus and NJTC are anything but sophisticated commercial parties that chose to contract with one another – at arm's length.

Despite the fact that the case relied upon by Plaintiff is clearly distinguishable from the instant matter, the Court determines that it would be premature to dismiss Plaintiff's claim without providing Plaintiff with the opportunity to offer evidence in support of its allegation that the warranty provided by Defendants to NJTC contained a promise of future performance.[11] <u>See, e.g.</u>, <u>Scheuer</u>, 416 U.S. at 236 ("The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."). In making this determination, the Court is mindful that if the tender of delivery took place in 1999, as alleged by Defendants, and if the warranty did not explicitly extend to future performance, the action would be barred by the applicable four-year statute of limitations. However, if the warranty was extended, it is possible that Plaintiff's cause of action may be timely. <u>See, e.g.</u>, <u>Comm'rs of Fire Dist. No. 9, Iselin, Woodbridge, N.J. v. Am. La France</u>, 424 A.2d 441, 444 (N.J. Super. Ct. App. Div. 1980) (explaining that "if the warranty explicitly extended to future performance of the truck, the four-year limitations period did not begin to run until the breach the paint defect was or should have been discovered by plaintiff, provided the defect arose within the warranty period."). Accordingly, the Court denies Defendants' motion to dismiss as to Plaintiff's breach of warranty claim.

**C.    Magnuson-Moss Warranty Act Claim**

Plaintiff's Third Count is based upon the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301-2312. (Compl., Third Count, ¶ 2). Defendants move to dismiss Plaintiff's Third Count on the basis that such a claim is not cognizable because the Act applies only to a consumer product. (Def. Br. at 3). In particular, Defendants argue that a "transit bus owned by the New Jersey Transit Corporation is most obviously not normally used for personal, family, or household purposes, and is therefore not a consumer product protected by the Manguson-Moss Warranty Act." (<u>Id.</u> at 4). Plaintiff concedes that it cannot maintain the Third Count of its Complaint

---

[11] In light of the court's holding in <u>Docteroff</u>, Plaintiff will also need to demonstrate that the "future performance" exception to the four-year statute of limitations is applicable in the context of a commercial relationship. <u>Docteroff</u>, 659 A.2d at 954.

against Defendants. (Pl. Opp'n Br. at 2). As a result, the Court grants Defendants' motion to dismiss in this regard, with prejudice.

**IV.     Conclusion**

Based on the reasons set forth above, Defendants' motion to dismiss is granted as to the First, Third and Fourth Counts of the Complaint, and is denied as to the Second Count of the Complaint.

An appropriate Order accompanies this Letter Opinion.

Sincerely,

/s/ Jose L. Linares
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE